******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

SANDHYA DESMOND *v.* YALE-NEW HAVEN
HOSPITAL, INC., ET AL.
(AC 44180)
(AC 44181)
(AC 44182)

Bright, C. J., and Alvord and Norcott, Js.

*Syllabus*

The plaintiff appealed to this court from the judgments of the trial court
dismissing the substitute complaints in three cases she had filed against
her former employer, the defendant hospital, as barred by the exclusivity
provision (§ 31-284 (a)) of the Workers' Compensation Act (§ 31-275 et
seq.). The plaintiff had been employed by the defendant when she suf-
fered an injury for which she sought workers' compensation benefits,
and the defendant accepted the claim. The plaintiff filed functionally
identical substitute complaints in each of the three actions, alleging, inter
alia, that the defendant had engaged in retaliatory and discriminatory
conduct against her in violation of statute (§ 31-290a) as a result of her
having sought workers' compensation benefits. The trial court granted
the defendant's motions to strike all three complaints, determining that
they did not allege employment discrimination claims pursuant to § 31-
290a but, rather, bad faith processing of a workers' compensation claim,
which was barred by § 31-284 (a). *Held* that the trial court properly
struck the complaints as being barred by § 31-284 (a), as the plaintiff
failed to allege any adverse employment action by the defendant, none
of its alleged behavior related to or had any effect on her employment
status, she admitted in her complaints that the defendant's behavior did
not arise out of or in the course of her employment, and, despite her
attempt to recast her claims as alleging employment discrimination,
she alleged nothing more than bad faith processing of her workers'
compensation claim.

Argued January 20—officially released May 3, 2022

*Procedural History*

Action to recover damages for, inter alia, statutory
theft, and for other relief, brought to the Superior Court
in the judicial district of New Haven, where the court,
*Nazzaro, J.*, granted the defendants' motion to strike;
thereafter, the court denied the plaintiff's request for
leave to amend her substitute complaint; subsequently,
the court, *Ecker, J.*, granted the defendants' motion for
judgment and rendered judgment of dismissal, from
which the plaintiff appealed to this court, *Sheldon, Kel-
ler* and *Bright, Js.*, which reversed the judgment in
part and remanded the case for further proceedings;
thereafter, the court, *Young, J.*, consolidated the case
with two separate actions the plaintiff had brought
alleging discriminatory and retaliatory conduct by the
named defendant in connection with her claim for work-
ers' compensation benefits and transferred the cases to
the Superior Court in the judicial district of Waterbury,
Complex Litigation Docket; subsequently, the court,
*Bellis, J.*, granted the named defendant's motions to
strike and for judgments of dismissal, from which the
plaintiff filed separate appeals with this court, which
consolidated the appeals. *Affirmed.*

*Eric M. Desmond*, for the appellant (plaintiff).

*Phyllis M. Pari*, for the appellee (named defendant).

*Opinion*

ALVORD, J. In these consolidated actions, the plaintiff, Sandhya Desmond, a former employee of the defendant Yale-New Haven Hospital, Inc.,[1] appeals from the judgments of the trial court rendered following the granting of the defendant's motions to strike her complaints. On appeal, the plaintiff claims that the court incorrectly construed her claims as alleging bad faith processing of a workers' compensation claim rather than as claims made pursuant to General Statutes § 31-290a and, therefore, erred in determining that her claims were barred by the exclusivity provision of the Workers' Compensation Act (act), General Statutes § 31-275 et seq. We disagree and, therefore, affirm the judgments of the trial court.

We begin with the relevant portions of the lengthy procedural history of these actions, which is set forth in part in this court's decision in *Desmond* v. *Yale-New Haven Hospital, Inc.*, 138 Conn. App. 93, 50 A.3d 910, cert. denied, 307 Conn. 942, 58 A.3d 258 (2012) (*Desmond I*). "[T]he plaintiff was an employee of the [defendant]. On December 30, 2004, she was injured in the course of her employment. According to the plaintiff, she suffered a spill-related fall while at work and subsequently was diagnosed with bilateral, acute posttraumatic carpal tunnel injuries. Her physicians have advised her that, absent medical treatment, she permanently will be unable to use her hands.

"Subsequently, she filed a workers' compensation claim with regard to her injury, and the [self-insured defendant] accepted the claim. On March 6, 2008, she filed a federal action in United States District Court for the District of Connecticut, in which she alleged various claims under state law and the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. On March 23, 2009, the District Court granted the [defendant's] motion to dismiss as to the plaintiff's state law claims, allowing the action to proceed only on her claim under the Americans with Disabilities Act.[2]

"On May 20, 2010, the plaintiff filed in the Superior Court the operative complaint [of the first appeal] . . . . [That] complaint contained ten counts, alleging . . . workers' compensation fraud, statutory negligence, breach of contract, unfair and deceptive acts and practices in violation of [the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes 42-110a et seq.] and delay in the delivery of benefits under the act in violation of the plaintiff's state constitutional right to due process. The complaint alleged that the [defendant] had made various filings with the workers' compensation commission (commission) in a bad faith and fraudulent attempt to delay treatment. The complaint alleged that these bad faith attempts to delay treatment caused the plaintiff's condition to worsen, as

she did not receive necessary treatment." (Footnote added.) Id., 95–96.

Following the defendant's filing of a motion to dismiss, the court, relying on our Supreme Court's decision in *DeOliveira* v. *Liberty Mutual Ins. Co.*, 273 Conn. 487, 870 A.2d 1066 (2005) (holding that causes of action alleging bad faith processing of workers' compensation claim are barred by exclusivity provision of act), dismissed the action on the ground "that the plaintiff's claims did not allege conduct that was sufficiently egregious to remove the claims from the exclusive jurisdiction of the commission."[3] *Desmond I*, supra, 138 Conn. App. 96. The plaintiff thereafter appealed to this court. Id.

On appeal in *Desmond I*, this court held that, despite the labels the plaintiff placed on her claims, "[a]pplying the rule articulated in *DeOliveira* to the facts of [the] case, it is clear that the plaintiff's claimed injuries, allegedly caused by the [defendant's] bad faith delays in medical treatment, arose out of and in the course of the workers' compensation claims process. Therefore, we conclude that the plaintiff's alleged injuries fall within the jurisdiction of the commission and that, accordingly, the court properly granted the [defendant's] motion to dismiss." Id., 102. Accordingly, this court in *Desmond I* affirmed the judgment of the trial court dismissing the plaintiff's action. See id., 105.

Following our decision in *Desmond I*, the plaintiff, in August, 2013, brought a new action (2013 action) against the defendant. This court, in *Desmond* v. *Yale-New Haven Hospital, Inc.*, 181 Conn. App. 201, 185 A.3d 665, cert. denied, 330 Conn. 902, 191 A.3d 1001 (2018) (*Desmond II*), set forth additional procedural history related to the 2013 action. "On October 3, 2013, the plaintiff filed her [first] amended complaint . . . wherein she again set forth ten counts against the [defendant], claiming statutory theft, common-law fraud, violation of CUTPA, breach of contract and statutory negligence. The [defendant] moved to strike all of the plaintiff's claims on the ground, inter alia, that they are barred by the exclusivity provision of the act, and thus that the trial court had no jurisdiction over them. The plaintiff filed an objection, arguing, inter alia, that her claims were not barred by the exclusivity of the act. . . .

"By way of a memorandum of decision filed on November 26, 2014, the court granted the [defendant's] motion to strike the plaintiff's entire complaint on the ground that all of the plaintiff's claims fell within the exclusive jurisdiction of the commission. The court reasoned that the alleged misconduct of the [defendant], which the court found to be 'identical to that alleged in *Desmond* [*I*] . . . but for the addition of some conduct by the [defendant] postdating the prior suit,' was not so egregious to invoke the exception to exclusivity.

"The plaintiff did not appeal from the trial court's ruling striking her complaint. Rather, on December 11, 2014, pursuant to Practice Book § 10-44, the plaintiff, in her view, as advanced before this court, filed a substitute complaint 'in an effort to plead additional facts and to amplify the allegations such that viability of the . . . [General Statutes] § 52-564 [statutory theft] claim (and associated claims) would be sufficient to allow the claim to proceed to the merits.'

"On February 5, 2015, the plaintiff filed a request for leave to amend her substitute complaint, pursuant to Practice Book § 10-60, to incorporate a claim for retaliatory discrimination pursuant to General Statutes § 31-290a. . . . On April 23, 2015, the court, *Nazzaro, J.*, denied the plaintiff's request for leave to amend, and sustained the [defendant's] objection thereto. . . .

"On May 7, 2015, the [defendant] filed a request to revise the plaintiff's substitute complaint, which she had filed on December 11, 2014. The [defendant] sought to have the plaintiff's entire substitute complaint deleted because the allegations of the substitute complaint were substantially similar to those contained in the plaintiff's previously stricken complaint and the allegations added to the substitute complaint failed to cure the deficiencies of the earlier complaint." (Footnote omitted.) Id., 205–207. The plaintiff objected to the defendant's request to revise. Id., 207.

"On March 4, 2016, the court, *Ecker, J.*, issued an order overruling the plaintiff's objections to the [defendant's] request to revise and rendered judgment dismissing her complaint. In so doing, the court held, inter alia: '[I]t is the court's opinion that the substitute complaint is not, in substance, materially different from the . . . stricken . . . complaint. In other words, the new allegations in the substitute complaint do not cure the legal deficiencies that caused Judge Nazzaro to strike the [amended] complaint. The substitute complaint contains many more pages of allegations, but those allegations, in this court's view, do not change the nature or character of the underlying claims in a manner that would alter the outcome of Judge Nazzaro's memorandum of decision striking the [amended] complaint.' The court also explained that it was disinclined to revisit Judge Nazzaro's decision striking the plaintiff's complaint, but that, even if it did so, it would agree that the plaintiff's allegations could not overcome the exclusivity of the act. The plaintiff subsequently sought reargument, which the court denied." Id., 209. The plaintiff then appealed. Id.

In *Desmond II*, this court declined to review the plaintiff's appellate claim that the trial court erred in determining that her claims were barred by the exclusivity of the act, concluding that the claim was inadequately briefed. See id., 213. This court did determine, however,

that the trial court "considered the wrong complaint when it denied the plaintiff's request for leave to amend" her substitute complaint in order to add a claim for retaliatory discrimination under § 31-290a, and, therefore, this court reversed the judgment in part and remanded the case for further proceedings on her request to amend the complaint and the defendant's objection thereto. Id., 215.

In the meantime, in 2015, and later, in 2016, the plaintiff filed two additional actions (2015 and 2016 actions) against the defendant arising from the same conduct, both captioned as seeking relief pursuant to § 31-290a.

On remand from *Desmond II*, on October 19, 2018, the court, *Young*, *J.*, issued a memorandum of decision in which it granted the plaintiff's request for leave to amend her complaint in the 2013 action to add retaliation and discrimination claims under § 31-290a. In the same memorandum of decision, the court, sua sponte, consolidated the 2013 action, which had been the subject of our review in *Desmond II*, with the 2015 and 2016 actions, and all three actions were transferred to the complex litigation docket.

On November 27, 2019, the plaintiff filed functionally identical substituted complaints in each of the three actions.[4] In the complaints, the plaintiff alleged that the defendant sought to delay or terminate her medical treatment and discriminated against her as a result of her having filed and maintained a workers' compensation claim "by intentionally or deliberately engaging in fraudulent, deceptive, misleading, and misrepresentative conduct . . . ." Specifically, she alleged that the defendant "engaged in aggressive vehicular surveillance of the plaintiff and her family"; "fabricated allegations" about the plaintiff's health and treatment and presented those allegations to the commission and the plaintiff's doctors; delayed payment for treatment that it had approved; and otherwise disrupted the plaintiff's ability to access treatment for her injury. As a result, the plaintiff alleged that she suffered a reduction in benefits, a denial of treatment, a delay in treatment, and an overall worsening of her medical condition. The plaintiff specifically stated that "the harm . . . from the defendant's discriminatory conduct did not 'arise out of or in the course of her employment' with the defendant."

On December 23, 2019, the defendant filed a motion to strike each of the substituted complaints, arguing, inter alia, that the actions "are barred by the exclusivity of the [act]."[5] The plaintiff objected.

On June 3, 2020, the court, *Bellis*, *J.*, issued three memoranda of decision, one in each action, striking all three of the complaints.[6] The court determined that the allegations in the plaintiff's complaints were properly construed as alleging bad faith processing of a workers' compensation claim, not employment discrimination

claims pursuant to § 31-290a. The court set forth the elements of an employment discrimination cause of action pursuant to § 31-290a as requiring adverse employment action and determined that "[a] close review of the allegations of the plaintiff's complaint makes clear that all of the alleged wrongdoing on the part of the defendant concerns its administration of the plaintiff's workers' compensation claim. Notably, there are no specific factual allegations that the defendant discriminated against the plaintiff with respect to her employment." The court then determined that such a claim was barred by the exclusivity provision of the act, relying on *DeOliveira* v. *Liberty Mutual Ins. Co.*, supra, 273 Conn. 487. Finally, the court noted that, even if the complaint properly was construed as alleging a claim of employment discrimination pursuant to § 31-290a, "such a claim would be legally insufficient because the plaintiff fail[ed] to allege that the defendant took any adverse employment action against her."

On June 23, 2020, the plaintiff filed motions for reargument and reconsideration as to the court's decisions striking all three complaints. The court denied the motions on July 6, 2020, and subsequently granted the defendant's motions for judgment on the stricken complaints. On July 24, 2020, the plaintiff appealed from each of the court's decisions striking the complaints, and this court, sua sponte, consolidated the three appeals.[7]

On appeal, the plaintiff claims that the trial court erred in striking her complaints. She argues that the court improperly construed her claims as alleging bad faith processing of a workers' compensation claim because she asserted claims pursuant to § 31-290a, which are not barred by the exclusivity provision of the act. The defendant responds that the court properly construed the claims as alleging bad faith processing of a workers' compensation claim and, therefore, properly struck the claims. We agree with the defendant.

We first set forth the applicable standard of review. "Because a motion to strike challenges the legal sufficiency of a pleading and, consequently, requires no factual findings by the trial court, our review of the court's ruling . . . is plenary. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Internal quotation marks omitted.) *Karagozian* v. *USV Optical, Inc.*, 335 Conn. 426, 433–34, 238 A.3d 716 (2020). "Moreover, we note that [w]hat is necessarily implied [in an allegation] need not be expressly alleged. . . . It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted."

(Internal quotation marks omitted.) *Lawrence* v. *O & G Industries, Inc.*, 319 Conn. 641, 649, 126 A.3d 569 (2015). Although "[w]e assume the truth of both the specific factual allegations and any facts fairly provable thereunder. . . . A [motion to strike] admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." (Internal quotation marks omitted.) *Binkowski* v. *Board of Education*, 180 Conn. App. 580, 585, 184 A.3d 279 (2018). "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." (Internal quotation marks omitted.) *Santorso* v. *Bristol Hospital*, 308 Conn. 338, 349, 63 A.3d 940 (2013). Furthermore, "[t]he interpretation of pleadings is always a question of law for the court and . . . our interpretation of the pleadings therefore is plenary." (Internal quotation marks omitted.) *Boone* v. *William W. Backus Hospital*, 272 Conn. 551, 573 n.12, 864 A.2d 1 (2005).

We next set forth the act's exclusivity provision which provides in relevant part: "An employer who complies with the requirements of subsection (b) of this section shall not be liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment . . . but an employer shall secure compensation for his employees as provided under this chapter . . . . All rights and claims between an employer who complies with the requirements of subsection (b) of this section and employees . . . arising out of personal injury or death sustained in the course of employment are abolished other than rights and claims given by this chapter . . . ." General Statutes § 31-284 (a).

In *DeOliveira*, our Supreme Court held that § 31-284 bars actions that allege bad faith processing of workers' compensation claims.[8] The court explained that "[t]he legislature . . . expressly has conferred jurisdiction upon the commission to adjudicate claims related to untimely payment of benefits and has developed a scheme under which remedies may be provided."[9] *DeOliveira* v. *Liberty Mutual Ins. Co.*, supra, 273 Conn. 496–97. In addition, as the court explained, "[t]he legislature has empowered the commission to take other measures to ensure prompt payment of benefits . . . ." Id., 497. "In other words, by providing remedies for such conduct, the legislature evinced its intention to bar a tort action for the same conduct proscribed and penalized under the act. . . . Indeed, construing the act to permit a tort action for an injury for which a remedial process is provided under the act would invite the indefinite prolonging of litigation and risk double recoveries and inconsistent findings of fact, a result which the legislature, in enacting a system of compensation in place of common law remedies, certainly wished to avoid." (Citations omitted; internal quotation marks omitted.) Id., 499–500.

Thus, the court concluded: "In light of the remedies expressly provided, we decline to construe § 31-284 as not barring [actions alleging bad faith processing of a workers' compensation claim] . . . [because] to do so would . . . usurp the legislative function. . . . [A] damage suit as an alternative or additional source of compensation, becomes permissible only by carving a judicial exception in an uncarved statute. . . . Neither moral aversion to the [insurer's act] nor the shiny prospect of a large damage verdict justifies interference with what is essentially a policy choice of the [l]egislature." (Internal quotation marks omitted.) Id., 501. "[I]njuries arising out of and in the course of the workers' compensation claims process fall within the scope of the exclusive remedy provisions because this process is tethered to a compensable injury." (Internal quotation marks omitted.) Id., 503. "It is also clear that [i]nsurer activity intrinsic to the workers' compensation claims process is also a risk contemplated by the compensation bargain. Thus, insurer actions[10] closely connected to the payment of benefits fall within the scope of the exclusive remedy provisions. . . . Consistent with this reasoning, we conclude that we must construe the exclusionary provision's prohibition on damages actions for injuries arising out of and in the course of . . . employment to include injuries arising out of and in the course of the *workers' compensation claims process*." (Citation omitted; emphasis in original; footnote added; internal quotation marks omitted.) Id., 504.

We next set forth the principles governing a claim of employment discrimination brought pursuant to § 31-290a,[11] which provides in relevant part: "(a) No employer who is subject to the provisions of this chapter shall discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to him pursuant to the provisions of this chapter. . . .

"(b) Any employee who is so discharged or discriminated against . . . may . . . (1) [b]ring a civil action in the superior court for the judicial district where the employer has its principal office for the reinstatement of his previous job, payment of back wages and reestablishment of employee benefits to which he would have otherwise been entitled if he had not been discriminated against or discharged and any other damages caused by such discriminated or discharge. The court may also award punitive damages. Any employee who prevails in such a civil action shall be awarded reasonable attorney's fees and costs to be taxed by the court . . . ."

"To establish a prima facie case of discrimination under § 31-290a, the plaintiff must show that she was exercising a right afforded her under the [act] and that the defendant discriminated against her for exercising that right. . . . [T]he plaintiff must show a [causal]

connection between exercising her rights under the act and the alleged discrimination she suffered. Implicit in this requirement is a showing that the defendant knew or was otherwise aware that the plaintiff had exercised her rights under the act. . . . [T]o establish [a] prima facie case of discrimination, the plaintiff must first present sufficient evidence . . . that is, evidence sufficient to permit a rational trier of fact to find [1] that she engaged in protected [activity] . . . [2] that the employer was aware of this activity, [3] that the employer took adverse action against the plaintiff, and [4] that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in *the adverse employment action*. . . .” (Emphasis added; internal quotation marks omitted.) *Callender* v. *Reflexite Corp.*, 143 Conn. App. 351, 364, 70 A.3d 1084, cert. denied, 310 Conn. 905, 75 A.3d 32 (2013); see also *Gibilisco* v. *Tilcon Connecticut, Inc.*, 203 Conn. App. 845, 860–61, 251 A.3d 994, cert. denied, 336 Conn. 947, 251 A.3d 77 (2021).[12]

“A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment. . . . To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. . . . [A]n adverse employment action [has been defined] as a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.” (Internal quotation marks omitted.) *Heyward* v. *Judicial Dept.*, 178 Conn. App. 757, 767–68, 176 A.3d 1234 (2017).

On review, it is clear that the plaintiff did not allege a claim of employment discrimination pursuant to § 31-290a, as the complaints in these consolidated actions failed to allege any adverse employment action. In the complaints, the plaintiff admitted that the defendant’s behavior “did not ‘arise out of or in the course of her employment’ . . . .” As the court determined, “all of the alleged wrongdoing on the part of the defendant concerns its administration of the plaintiff’s workers’ compensation claim.” None of the alleged behavior related to or had any effect on her employment status, and, thus, the plaintiff did not allege any adverse employment action.[13] See *Heyward* v. *Judicial Dept.*, supra, 178 Conn. App. 767–68. Not only did the plaintiff fail to allege any adverse employment action, her allegations form the type of claim that *DeOliveira* prohibits.[14]

We reject the plaintiff’s attempt to recast her claims as alleging employment discrimination pursuant to § 31-290a. Despite the labels the plaintiff has affixed to her complaints, she has alleged nothing more than bad faith processing of her workers’ compensation claim. See *Ganim* v. *Smith & Wesson Corp.*, 258 Conn. 313, 348,

780 A.2d 98 (2001) ("the labels placed on the allegations by the parties [are] not controlling"); see also *Gazo* v. *Stamford*, 255 Conn. 245, 263, 765 A.2d 505 (2001) ("we look beyond the language used in the complaint to determine what the plaintiff really seeks"). Therefore, the court properly determined that the plaintiff's complaints alleged claims of bad faith processing. Furthermore, as § 31-284 bars actions that relate to the processing of workers' compensation claims, the court properly struck the complaints as being barred by the exclusivity provision of the act. See *DeOliveira* v. *Liberty Mutual Ins. Co.*, supra, 273 Conn. 501; see also *Karagozian* v. *USV Optical, Inc.*, 335 Conn. 433–34.

The judgments are affirmed.

In this opinion the other judges concurred.

[1] Although in the first action at issue in this appeal, Docket No. CV-13-6045184-S, the plaintiff initially also named Yale-New Haven Health Services, Inc., as a defendant, the operative complaint in that action alleged no claims against Yale-New Haven Health Services, Inc., and did not list it as a defendant. Accordingly, we refer in this opinion to Yale-New Haven Hospital, Inc., as the defendant.

[2] See *Desmond* v. *Yale-New Haven Hospital, Inc.*, Docket No. 3:08-cv-00346 (VLB) (D. Conn. March 23, 2009). The District Court later granted the defendant's motion for summary judgment, rendering judgment in favor of the defendant on the remaining claim. See *Desmond* v. *Yale-New Haven Hospital, Inc.*, 738 F. Supp. 2d 331, 333 (D. Conn. 2010).

[3] The exclusivity provision of the act limits tort remedies available to workers' compensation recipients. *DeOliveira* v. *Liberty Mutual Ins. Co.*, supra, 273 Conn. 496. In *DeOliveira*, the court explained that there is a "narrow exception to the exclusivity provision for intentional torts." Id., 506. Specifically, the court "recognize[d] that there could be an instance in which an insurer's conduct related to the processing of a claim, separate and apart from nonpayment, might be *so egregious* that the insurer no longer could be deemed to be acting as an agent of the employer and, thus, a claim arising from such conduct would not fall within the scope of the act." (Emphasis in original.) Id., 507. That narrow exception is not at issue in the present appeal. See footnote 15 of this opinion.

[4] In the operative complaint in the 2013 action, Docket No. CV-13-6045184-S, the plaintiff set forth thirty-four pages of allegations and requested relief pursuant to § 31-290a. In the 2015 and 2016 actions' operative complaints, Docket Nos. CV-15-6045183-S and CV-16-6045181-S, the plaintiff organized the same allegations into two counts: discrimination in violation of § 31-290a and retaliation in violation of § 31-290a. The allegations in each count are virtually identical with the exception of the terminology: in count one, the plaintiff characterizes the defendant's actions as "discriminatory" and in count two as "retaliatory."

[5] The defendant also argued that the complaints failed to allege the requisite elements of a § 31-290a claim and that they were barred by the law of the case doctrine, the absolute litigation privilege, res judicata and collateral estoppel, the prior pending action doctrine, and the applicable statute of limitations.

[6] In the memoranda of decision in the 2015 and 2016 actions, the court referred to its analysis in the memorandum of decision issued in the 2013 action as the basis for striking those complaints, determining that the complaints in the 2015 and 2016 actions were "virtually indistinguishable" from the complaint in the 2013 action.

[7] The plaintiff thereafter filed motions for articulation, which were denied. The plaintiff then filed motions for review with this court, which granted review but denied the relief requested.

[8] In *DeOliveira*, "the plaintiff asserted claims of negligent, reckless and intentional conduct, implied breach of the covenant of good faith, negligent and intentional infliction of emotional distress and a violation of [CUTPA]"; *DeOliveira* v. *Liberty Mutual Ins. Co.*, supra, 273 Conn. 493; after his employer "contest[ed] that the plaintiff's injury arose in the course of his employment." Id., 491. The claims were, however, construed as "alleging, in essence, that the defendant unreasonably delayed its processing of the

plaintiff's workers' compensation claim . . . ." Id., 489.

[9] "As a general matter, the [workers' compensation] commissioners have jurisdiction to hear all claims . . . arising under [the act] . . . . General Statutes § 31-278. Specifically, the commissioners have the authority to hear an employee's claim that, through the fault or neglect of an employer or insurer, the adjustment or payment of compensation due . . . [has been] unduly delayed and to assess a civil penalty of up to $500 for each case of delay. General Statutes § 31-288 (b). If an employer or insurer unreasonably contests liability, the commissioners have authority to award attorney's fees to the employee. General Statutes § 31-300. Similarly, if a commissioner determines that, through the fault or neglect of the employer or insurer, payments or adjustments in payment have been delayed unduly or unreasonably, the commissioner may include interest and attorney's fees in an award. General Statutes § 31-300. Finally, if an employer fails to make payments due under an award or voluntary agreement within the statutorily prescribed period, a commissioner shall assess a penalty for each late payment, in the amount of [20 percent] of such payment, in addition to any other interest or penalty imposed pursuant to the provisions of this chapter. General Statutes § 31-303." (Internal quotation marks omitted.) *DeOliveira* v. *Liberty Mutual Ins. Co.*, supra, 273 Conn. 497.

[10] The court noted that exclusivity applies to "wrongful, not merely negligent, conduct." *DeOliveira* v. *Liberty Mutual Ins. Co.*, supra, 273 Conn. 507. Indeed, the court explained that the exclusivity provision only allows an exception for intentional torts when the behavior alleged is "egregious . . . ." Id.; see also footnote 3 of this opinion.

[11] Although § 31-290a has been amended since the events at issue; see Public Acts 2021, No. 21-18, § 1; Public Acts, Spec. Sess., June, 2021, No. 21-2, § 90; those amendments are not relevant to this appeal. We therefore refer to the current revision of § 31-290a.

[12] The plaintiff argues that a claim of employment discrimination brought pursuant to § 31-290a does not require adverse employment action and asserts a variety of arguments in support of that position; however, after careful review of these arguments, the applicable law, and the record, we conclude that these arguments are meritless.

[13] The plaintiff argues, in the alternative, that, if a § 31-290a claim requires an adverse employment action, the trial court "fail[ed] to recognize that adverse employment actions include discrimination against workers' compensation claimants." According to the plaintiff, "[t]he relationship between the plaintiff and the defendant constitutes a type of implied employment relationship that is contingent upon an underlying employer-employee relationship. This is sufficient to find that the defendant's actions constitute adverse employment actions with respect to the plaintiff's exercises of rights under the act . . . [because], when [the] defendant discriminatorily targets the plaintiff . . . it causes a materially adverse change to the uninterrupted receipt by [her] of employment related wages and benefits." (Internal quotation marks omitted.) We reject this argument as meritless.

[14] We note that the plaintiff never argued, and does not do so on appeal, that she has alleged conduct that was sufficiently egregious to remove the claims from the exclusive jurisdiction of the commission. See footnote 3 of this opinion.